```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                                                         :
                                                         :
                    - against -                          :      09-CR-1054 (VSB)
                                                         :
                                                         :      OPINION & ORDER
                                                         :
RONNY GONZALEZ,                                          :
                                                         :
                                   Defendant.            :
                                                         :
-------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/16/2021

Appearances:

Peter J. Davis
New York, NY
U.S. Attorney's Office, Southern District of New York

*Counsel for Government*

Jennifer L. Brown
New York, NY
Federal Defenders of New York Inc.

*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

     Before me is Defendant Ronny Gonzalez's ("Defendant" or "Gonzalez") motion for a reduction of his sentence pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222, which made retroactive certain relevant provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. (Doc. 165.) For the reasons below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

I.     **<u>Factual Background and Procedural History</u>**

On June 16, 2010, Defendant pleaded guilty to conspiracy to distribute and possession with intent to distribute crack cocaine, a felony pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846.  In the written plea agreement, the parties stipulated that the conspiracy involved more than 50 grams but less than 150 grams of crack cocaine.  *See* Presentence Investigation Report ("PSR") ¶ 6(b) (Oct. 15, 2010.)  The plea agreement also stipulated that Defendant was a career offender under Section 4B1.1 of the U.S. Sentencing Guidelines Manual, U.S.S.G. § 4B1.1(b), Defendant's offense level was 34, Defendant's criminal history category is VI, and the sentencing guidelines accordingly ranged from 262 to 327 months.  (*Id.* ¶ 6.)  At the time, the mandatory minimum term for this offense was 120 months' imprisonment, with a maximum term of imprisonment for life.  (*Id.* ¶ 94.)  On October 27, 2010, Judge Shira A. Scheindlin sentenced Defendant to 180 months' imprisonment and five years of supervised release.  (Doc. 165-1, at 20:13-18); *see also* (Doc. 98.)  Defendant now asks that I reduce that sentence to eight years (96 months) imprisonment with six years of supervised release.  (Doc. 165.)

In a separate prosecution in January 2013, Defendant and his two co-defendants were convicted after an 11-day jury trial of conspiracy to commit robbery, robbery, and possession or use of a firearm during a crime where murder resulted.  *United States v. Gonzalez*, No. 11-cr-487 (S.D.N.Y. Jan. 23, 2013), Doc. 75, at 5; Doc. 81.  The incident in question occurred in December 1, 2007.  *Gonzalez*, No. 11-cr-487, Doc. 75, at 2–4.  Defendant was sentenced to a total of 30 years on Count 3 and 20 years for each of Counts 1 and 2, all to run concurrently with each other, and consecutive to the undischarged sentence in the case at issue before me, *United States v. Gonzalez*, No. 09-cr-1054.  (*See* Doc. 81 at 2.)

2

## II. Applicable Law

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. Prior to its passage, "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine"—even though crack and cocaine "are two forms of the same drug." *Kimbrough v. United States*, 552 U.S. 85, 91, 94 (2007). The Fair Sentencing Act was passed in large part "because the public had come to understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences." *Dorsey v. United States*, 567 U.S. 260, 268 (2012). The United States Sentencing Commission in 2007 found that "[a]pproximately 85 percent of defendants convicted of crack offenses in federal court are black," meaning that "the severe sentences required by the 100-to-1 ratio [were] imposed primarily upon black offenders." *Kimbrough*, 552 U.S. at 98 (internal quotation marks omitted).

The Fair Sentencing Act, in relevant part, "increased from 50 grams to 280 grams the amount of crack required to trigger the minimum and maximum sentences imposed by 21 U.S.C. § 841(b)(1)(A)." *United States v. Jimenez*, No. 92-cr-550-01 (JSR), 2020 WL 2087748, at *2 (S.D.N.Y. Apr. 30, 2020). The Fair Sentencing Act initially did not apply to those who had been sentenced before its enactment. However, that changed when Congress enacted the First Step Act (the "Act") in December 2018, when Congress made the Fair Sentencing Act retroactive. Specifically, Section 404 of that Act provides:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.

Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. The Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section

2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a).  Courts cannot hear a motion for sentence reduction under the Act if either the defendant's sentence "was previously imposed or previously reduced" under the Fair Sentencing Act, or if a previous motion was made and denied on the merits.  *Id.* § 404(c).  Any sentence reduction is at the discretion of the Court.  *See id.* ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

### III. Legal Standard

In determining whether or not to grant a sentence reduction pursuant to the First Step Act, a reviewing district court "must conduct a two-part inquiry.  First, the court must determine whether the defendant is eligible for a reduction.  Second, if the defendant is eligible, the court must determine whether, and to what extent, to exercise its discretion to reduce the sentence." *United States v. Moore*, 975 F.3d 84, 89 (2d Cir. 2020) (citing *United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020)).  The second part of the test "falls within the scope of § 3582(c)(1)(B), which provides that a 'court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'"  *Holloway*, 956 F.3d at 666 (quoting 18 U.S.C. § 3582(c)(1)(B)).  As such, "courts may consider the relevant . . . factors" provided for at 18 U.S.C. § 3553(a) designed to determine whether a sentence is "sufficient, but not greater than necessary."  *United States v. Thomas*, 827 Fed. App'x 63, 65 (2d Cir. 2020); *see also, e.g.*, *United States v. Cabassa*, No. 19-3874-cr, 2021 WL 28150, at *2 (2d Cir. Jan. 5, 2021); *United States v. Agostini*, No. 00 CR 237(VM), 2020 WL 6136199, at *4 (S.D.N.Y. Oct. 19, 2020). However, "[a] district court is not required to discuss every § 3553(a) factor individually or to make robotic incantations in sentencing decisions."  *Cabassa,* 2021 WL 28150, at *2 (internal quotation marks omitted).

### IV.  Application

The parties agree that Defendant is statutorily eligible to have his sentence reduced under the Act.  (*See* Doc. 165, at 3–4; Doc. 167, at 3.)  Based upon the facts and procedural history of this case, the parties are correct.  Defendant was convicted under 21 U.S.C. § 841(b)(1), one of the provisions whose penalties were later reduced by the Fair Sentencing Act and made retroactive under the Act.  Defendant's sentence was neither previously imposed nor previously reduced under the Fair Sentencing Act, and there is no indication that Defendant has previously made a motion that was denied on the merits.[1]  Accordingly, Defendant satisfies the first part of the test and is eligible for consideration for a sentence reduction.

The parties disagree as to the second part of the test:  whether I should exercise my discretion to reduce Defendant's sentence.  I have reviewed all the factors under 18 U.S.C. § 3553(a), and will begin my analysis with the prevailing sentencing guidelines.  The parties agree that the current sentencing guidelines range for Defendant is 188 to 235 months.  *See* Revised Supplemental Presentence Report, (Doc. 166), at 2 (May 14, 2019)); (Doc. 165, at 4 n.3; Doc. 167, at 3.)

The Government notes that Defendant's initial sentence of 180 months constitutes a below-guideline sentence even after the passage of the Act, and argues that therefore any subsequent reduction would be unwarranted.  (Doc. 167, at 3–4.)  Judge Scheindlin, though, issued a sentence that fell well short of the then-prevailing guidelines, finding that such a sentence was "sufficient but not greater than necessary to serve all the goals of sentencing."  (Doc. 165-1, at 20:16-18.)  Defendant's current sentence is now proportionally much closer to

---

[1] Following the passage of the Fair Sentencing Act, Judge Scheindlin issued an order stating that Defendant "may be eligible for re-sentencing" pursuant to 18 U.S.C. 3582 (c)(2), and indicating that she would "reconsider" his sentence, (Doc. 118), but there is no indication of any action taken by Judge Scheindlin or the parties before the instant motion.

5

the prevailing guidelines range than it was when Defendant was sentenced in 2010. More fundamentally, as Defendant rightly notes, Judge Scheindlin's sentencing decision appears to have been heavily influenced by the then-prevailing sentencing guidelines and mandatory minimum sentence. *See* (Doc. 165, at 6–7.) At the sentencing proceeding, Judge Scheindlin on several occasions referenced the fact that she was required to adhere to the then-required ten-year mandatory minimum sentence, *see* (Doc. 165-1, at 9:11-14, 14:5-7, 23:25-24:3, 25:4-8), and the then-prevailing sentencing guidelines range of 262 to 327 months, *see* (*id.* at 2:11-24, 9:17-11:22, 25:4-15.) As the Supreme Court has noted, sentencing guidelines "anchor the court's discretion in selecting an appropriate sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Indeed, even non-guideline sentences may still be "explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference." *United States v. Fagans*, 406 F.3d 138, 141 (2d Cir. 2005); *see also United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010) (noting that "the Guidelines sentence serves as the starting point and initial benchmark" for the sentencing court) (internal quotation marks omitted). While I cannot say with certainty how Judge Scheindlin would have ruled if the current sentencing rules were in place, "all else equal, a lower mandatory minimum typically leads to a lower sentence." *United States v. Morgan*, No. 09 Cr. 699 (PAC), 2019 U.S. Dist. LEXIS 123702, at *9 (S.D.N.Y. July 22, 2019); *see also United States v. Collado*, No. 09 Cr. 1060–02(RWS), 2011 WL 1046123, at *4 (S.D.N.Y. Mar. 22, 2011) ("Were the Court not bound by the statutory mandatory minimum, a much lower sentence would be warranted in this case based on Collado's difficult childhood, his long struggle with substance abuse problems and his lack of education."); *United States v. Martin*, No. 03-cr-795 (BMC), 2019 WL 1558817, at *5 (E.D.N.Y. Apr. 10, 2019), *vacated on other grounds*, (Apr. 22, 2019) ("I believe that, everything else being equal except the mandatory

6

minimum defendant faced on Count 7, if defendant's Guidelines range had been lower at sentencing, Judge Trager would have sentenced him to less time.").

There are several factors that militate in favor of reducing Defendant's sentence here. The Government argues that there is a "need to protect the public from future crimes by this defendant," noting what it calls a "long and violent" criminal history. (Doc. 167, at 4.) Yet, to the extent that is true, Defendant's multiple convictions ensure that he will be in prison for decades no matter what. Given the "virtually undisputed finding in criminology . . . that people age out of crime," there is likely no meaningful deterrent or protective function to keeping Defendant in prison for even longer—especially when considering that most of Defendant's criminal activity occurred when he was a very young man. *See* Joy Radice, *The Reintegrative State*, 66 Emory L.J. 1315, 1338 (2017); *see also, e.g.*, U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017) ("Older offenders were substantially less likely than younger offenders to recidivate following release . . . The pattern was consistent across age groupings, and recidivism measured by rearrest, reconviction, and reincarceration declined as age increased."); Kim Steven Hunt & Andrew Peterson, *Recidivism Among Offenders Receiving Retroactive Sentencing Reductions: The 2007 Crack Cocaine Amendment*, 26 Fed. Sent'g Rep. 339, 339 (2014) (U.S. Sentencing Commission finding "no evidence that offenders whose sentence lengths were reduced pursuant to retroactive application of the 2007 Crack Cocaine Amendment had higher recidivism rates than a comparison group of crack cocaine offenders who were released before the effective date of the 2007 Crack Cocaine Amendment and who served their full prison terms").

As Judge Scheindlin noted, Defendant also had a "very difficult childhood." (Doc. 165-1, at 26:2-7.) Both of Defendant's parents were alcoholics and drug addicts and Defendant

witnessed his father commit domestic abuse against his mother. (PSR ¶¶ 69, 71.) Defendant and his siblings also endured physical abuse from their mother. (*Id.* ¶ 71.) Defendant's parents both died when he was a child, at which point he went to live with his grandmother. (*Id.*) While in her custody, Defendant was physically abused by his aunts and uncles. (*Id.*) Defendant began drinking alcohol and smoking marijuana and crack cocaine when he was 14 years old, and has long struggled with addiction issues. (*Id.* ¶¶ 80–84.) By 17 years old, he had already been shot on two occasions and suffered wounds on his chest, arms, and legs. (*Id.* ¶ 77.) These aspects of Defendant's history and background weigh in favor of sentence reduction. *See, e.g.*, *Collado*, 2011 WL 1046123, at *4; *United States v. Ruiz*, No. 06 CR 543(PKC), 2009 WL 636543, at *1 (S.D.N.Y. Mar. 11, 2009) (finding that below-guideline sentence was justified in part by "the youthful age of defendant at the time of the offense and at the time of the offenses which have contributed to his criminal history category," "his difficult childhood which included physical abuse by his mother," "his early use of and addiction to drugs and alcohol," and "the absence of any prior substance abuse assistance."). The Government does not dispute Defendant's childhood history.

Finally, Defendant has taken steps toward rehabilitation. Prior to the COVID-19 pandemic, Defendant had enrolled in several courses, including GED and literacy classes and Alcoholics Anonymous. (Doc. 165, at 8.) The Government points to Defendant's disciplinary infractions as militating against a sentence reduction. (Doc. 167-1.) I give this fact little weight because, as Defendant notes, he has only had three such infractions in the past seven years. (*Id.*); *see* (Doc. 165, at 9.)

That said, other factors weigh against reducing Defendant's sentence quite as dramatically as he requests. Defendant has a long criminal history that includes felony

convictions for a crime of violence and a narcotics offense resulting in him being a career criminal, a conviction for attempted escape, and the PSR indicates that he served in a leadership role within a drug distribution organization. (*Id*. ¶¶ 17, 49–57.) The data demonstrate that individuals with extensive criminal histories are more likely to recidivate. *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 5 (2016) ("A federal offender's criminal history was closely correlated with recidivism rates. . . . Each additional criminal history point was generally associated with a greater likelihood of recidivism."). Further, Judge Scheindlin apparently did not believe that Defendant was deserving of being sentenced to the mandatory minimum sentence of 120 months' imprisonment, as she opted to sentence Defendant to 180 months' imprisonment.

However, Judge Scheindlin clearly felt that Defendant merited a below-guideline sentence, and there does not appear to be support for an argument that Judge Scheindlin would have sentenced Defendant to 180 months' imprisonment—the sentence the Government advocates—in light of the current lower guideline range and no mandatory minimum sentence. To the contrary, there is every indication that Judge Scheindlin felt that a guideline sentence was too harsh. Judge Scheindlin's 180-month sentence was 31.3% lower than the 262-month low-end guideline range at the time. If I adopted the identical approach, in light of the new guidelines, Defendant's sentence would reduce to roughly 129 months. However, I still feel a small adjustment is warranted in Defendant's favor, given his steps toward rehabilitation and the fact that he will be much older once he is released from prison, facts that were not available to Judge Scheindlin when she imposed the 180-month sentence.

Therefore, considering the section 3553(a) sentencing factors and all of the above facts, I find that Defendant's motion for a reduced sentence should be GRANTED IN PART and

9

DENIED IN PART. I deny Defendant's request that I reduce his sentence to 96 months' imprisonment. However, I grant Defendant's request for a reduction in his sentence and reduce his sentence to 120 months' imprisonment—giving him a slightly more significant percentage reduction from the guideline range as did Judge Scheindlin—followed by six years of supervised release. This sentence certainly constitutes sufficient punishment for an individual who was "caught with selling . . . a small amount, $160," in crack cocaine. (Doc. 165-1, at 19:7-9).

## V.     Conclusion

Defendant's motion to have his sentenced reduced is GRANTED IN PART and DENIED IN PART, and his sentence is reduced to 120 months' imprisonment, followed by six years of supervised release.

SO ORDERED.

Dated: February 16, 2021
       New York, New York

_____
Vernon S. Broderick
United States District Judge